## J. W. OWEN v. THE STATE.

No. 422.    Decided February 9, 1910.

**1.—Assault to Murder—Charge of Court—Self-Defense—Warrant of Arrest—Purpose and Capacity of Officers.**

Where upon trial of assault with intent to murder, the evidence showed that the parties injured were officers who came to arrest the defendant and made an assault upon him, he had the right of self-defense even if he knew the

purpose and capacity of the officers, and it was reversible error to submit a charge to the jury which denied the defendant the right to defend himself if he knew the purpose and capacity of the officers at the time.

### 2.—Same—Evidence—Other Offenses.

Upon trial of assault with intent to murder, the court erred in permitting the State's witness to testify that the defendant had threatened to kill the witness and her mother on the morning of the alleged offense.

### 3.—Same—Evidence—Declaration of Third Parties.

Upon trial of assault with intent to murder it was error to permit the State's witness to give the details of a conversation that he had with another as to the character of the man the witness was going to arrest, beyond his statement that he summoned the other person to assist him in making the arrest.

### 4.—Same—Charge of Court—Duty of Officers.

Upon trial of assault with intent to murder, where the evidence showed that the officers made an assault on the defendant, it was error in the court's charge to instruct the jury that when a warrant of arrest is placed in the hands of an officer he is bound to execute the same by taking the person, etc., as this would infringe upon defendant's right of self-defense.

### 5.—Same—Charge of Court—Character of Person Arrested—Undisclosed Motive.

Upon trial of assault with intent to murder, where the evidence showed that the injured parties were officers who in attempting to arrest the defendant made an assault upon him, the court erred in charging the jury in connection with the officers' duty to arrest and the force the officers were authorized to use, that in determining this force the jury would have a right to take into consideration the character and the previous acts and conduct, if any, of the person to be arrested; as the defendant had the right to view the assault from his standpoint, and it was immaterial what was in the minds of the officers at the time of making the arrest.

### 6.—Same—Charge of Court—Arrest.

Upon trial of assault with intent to murder, the court was correct in charging the jury that a peace officer has the right to summon assistance in making an arrest, yet it was error to instruct them that an officer would have this right when he reasonably believed he was not able to arrest the party whom it is his duty to arrest; this threw an unnecessary burden into the case.

### 7.—Same—Charge of Court—Authority of Officers.

Where upon trial of assault with intent to murder, the difficulty grew out of the attempt of officers to arrest the defendant, and there was no evidence that the officers were prevented from making known their authority to the defendant, it was error to charge the jury that it was the duty of the officers to make their authority known unless by the acts or conduct of the accused such officers were precluded from making known such authority.

### 8.—Same—Charge of Court—Threats of Third Parties—Capacity and Purpose of Officers.

Upon trial of assault with intent to murder where there was evidence that there were threats by third parties against the defendant, and the court in his charge in submitting this issue of threats charged the jury that defendant would have the right of self-defense if he mistook the officers for said third parties, provided he did not know the capacity or purpose of said officers, the same was error.

### 9.—Same—Warrant of Arrest.

Upon trial of assault with intent to murder where the warrant of arrest which the officers held for the arrest of the defendant charged defendant with an assault upon a child, the same was sufficient.

### 10.—Same—Evidence—Practice—Objections to Testimony.

Upon trial of assault with intent to murder it was error to deny defendant

the right to make objections to testimony while the State's witness was testifying, and to permit such State's witness to detail all the circumstances as to what transpired between the witness and her mother in the absence of the defendant, and then verbally instruct the jury not to consider certain testimony admitted.

**11.—Same—Evidence—Other Crimes.**

Upon trial of assault with intent to murder it was error to permit the State over objections of defendant to prove by the State's witness that her stepfather, the defendant, had been indicted for whipping her little brother.

**12.—Same—Evidence—Leading Questions.**

Upon trial of assault with intent to murder it was error to permit the State's counsel to ask State's witness whether defendant had whipped her little brother that day or the day before.

Appeal from the District Court of Taylor. Tried below before the Hon. Thomas L. Blanton.

Appeal from a conviction of assault with intent to murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*H. T. King* and *Dallas Scarborough,* for appellant.—The right to act in self-defense is neither abridged nor destroyed by the fact that the assault is made by an officer, and even though that fact is known to the party assaulted: Tiner v. State, 44 Texas, 128; English v. State, 34 Texas Crim. Rep., 190, 30 S. W. Rep., 233; Hardin v. State, 40 Texas Crim. Rep., 208, 49 S. W. Rep., 607.

Acts and declarations of a third party in the absence of the accused are not admissible: Burke v. State, 15 Texas Crim. App., 156; Millsaps v. State, 38 Texas Crim. Rep., 570, 42 S. W. Rep., 991.

Separate and independent transactions having no connection with the case are not admissible: Miller v. State, 105 S. W. Rep., 502.

On question of court's charge as to force used by officer in making arrest: Parrish v. State, 45 Texas, 51; Foster v. State, 1 Texas Crim. App., 363.

*John A. Mobley,* Assistant Attorney-General, for the State.

McCORD, JUDGE.—Appellant was convicted in the court below for an assault with intent to murder and his penalty assessed at confinement in the penitentiary for five years.

Briefly stated, the facts show that on the 25th day of August, 1908, the justice of the peace of Precinct No. 7, Taylor County, Texas, issued a warrant of arrest for appellant upon an affidavit filed in his court charging appellant with assault upon a minor. This warrant of arrest was placed in the hands of the constable, Sam Smothers, and Smothers was apprehensive that he would have trouble in arresting appellant; he summoned one D. M. Thomas to assist him in making the arrest; they went to the home of appellant, arriving there about 12 o'clock in the daytime. The witness Smothers was armed

with a six shooter and the injured party, Thomas, with a Winchester rifle. There were some eight or ten other parties around the home of appellant at the time the arrest was made. As to whether these other parties were a part of the posse we are not advised by the statement of facts. Smothers testified that when he and Thomas went up to the front of the house they approached the house on the northeast; that the house fronts east; that he supposed the house to be 14 x 16 feet with bed-room on the west; that the house has a door and window on the east side and also a window on the north side; that a person approaching the house would not come in plain view of it until he had crossed the ravine some forty or fifty yards from the house; that they went up to the fence, which was some twenty steps from the house, and crawled under the fence and when the witness Thomas got within about fifteen steps of the house Owen, the appellant, stepped to the door and the witness drew his pistol, leveled it at Owen and told him to throw up his hands; that when he said that, he further testifies, that appellant dropped behind the door and shot; that appellant shot twice, Mr. Thomas fell and the witness ran around the corner of the house. The witness is positive that he did not say anything to appellant, and neither did Thomas say anything to appellant, nor did the appellant say anything to them, other than what has been heretofore stated, that he, the witness, told the appellant to throw up his hands and he threw his pistol down on him, the appellant. Thomas' testimony does not contradict this statement on the part of Smothers. Appellant took the stand and testified that the first he knew of anything, he came to the door, and when he came to the door he saw Thomas and Smothers, and that Smothers threw a gun down on him, told him to throw up his hands, and fired at him, when he jumped back, grabbed his gun and returned the fire; that he did not know that Smothers was an officer, or that he had any papers for his arrest; that he saw several parties around the house and had heard some days before this a rumor to the effect that they were going to mob him. Now then, under this state of facts, the court charged the jury as follows: "Upon the law of self-defense, you are instructed that if the defendant had no knowledge of the purpose and capacity of said D. M. Thomas and Sam Smothers at the time they came to his house, and if from the acts of the said D. M. Thomas or Sam Smothers, if any, there was created in the mind of the defendant a reasonable apprehension that he, the defendant, was in danger of losing his life or of suffering serious bodily injury at the hands of the said D. M. Thomas or Sam Smothers, then the defendant had the right to defend himself from such danger or apparent danger, as it reasonably appeared to the defendant viewed from his standpoint," etc. Complaint is made of this charge by appellant in his motion for new trial, and it is claimed that said charge is erroneous because the court denied the appellant the right to defend himself if he knew the purpose and capacity of Thomas and Smothers in coming to his house. Under the facts of the case this

charge was erroneous. As far as the right of self-defense existed under appellant's testimony in the case it would be wholly immaterial whether the appellant knew or not that the prosecuting witness had come to arrest him and it was immaterial whether he knew that they had a warrant or not. If the officer came to his house and assaulted the appellant he had the same right to defend against an attack from the officer as he would anyone else, and his right of self-defense would not depend upon his knowledge of the capacity or purpose of the parties in coming to the house. There is no evidence in the record that Smothers or Thomas ever informed the appellant of their purpose in being at the house. The first that appellant knew of their presence was when Smothers threw his gun down upon him and ordered him to throw up his hands. If appellant knew the purpose and object of Smothers was to arrest him and knew that Smothers had a warrant for his arrest, then it would be the duty of the appellant to submit, and if he resisted the efforts of the officer to arrest him he then might be guilty of an assault with intent to murder, but if the officer comes upon the citizen and without apprising him of his purpose or whether he apprised him of his purpose or not, commenced a deadly assault upon the citizen, most certainly the citizen would have the same right to defend himself against the act of the officer as he would an individual, and the fact that the officer is armed with a warrant does not in any way license him or give him authority to assault the party against whom he holds the warrant. It is the duty of the citizen to submit to the execution of a warrant, and if the appellant assaulted the officer he would then be guilty of either assault to murder or an aggravated assault. What we desire to be understood as saying is that simply because the officer is armed with a warrant does not justify him, the officer, in making a deadly assault upon the citizen and that the right of the citizen will not be abridged by a knowledge that the officer has a warrant. For the error in this charge of the court the case will have to be reversed.

2. There are some other questions, however, raised in the record that it will be well to notice. We think the court erred in permitting the State's witness, Viola Ellis, to testify that the appellant had threatened to kill her and her mother on the morning of the commission of the alleged offense. These were extraneous crimes and ought not to have been admitted as testimony in this case.

3. We think the court erred in allowing the witness Sam Smothers to testify that he had a conversation with Thomas and that he summoned Thomas to assist him in making the arrest, and stated to Thomas that he had a man down there that he could not arrest and who would not surrender, and that he wanted him, Thomas, to help arrest him. The witness Smothers had the right to say he summoned Thomas to assist him in making the arrest, but we think it was prejudicial to the appellant for the witness Smothers to give the details

of a conversation he had with Thomas as to the character of the man he was going to arrest.

4.  We think that the court's charge as to what the powers and duties of officers making arrests are was. correct with this exception: That in that portion of the court's charge wherein the court directed the jury that when a warrant of arrest is placed in the hands of an officer for execution he is bound to execute the same by taking the person whom he is directed to arrest forthwith before the magistrate named in the warrant.  Under the peculiar facts of this case, it strikes us that this charge should not have been given as the jury might have been led to believe that if Thomas and Smothers were bound to arrest the appellant, that, therefore, the appellant would not have a right to defend himself against an assault made upon him.  An officer's intention may be ever so good, but what was in the mind of the officer was not conveyed to the appellant in this case.  The conduct of the officer on the occasion as testified to by himself was such as ordinarily would be considered an assault.

5.  We think the court further erred in telling the jury that an officer is permitted by law to use all reasonable means to effect the arrest but should not be allowed to resort to greater force than is reasonably necessary, and in determining this force the jury would have a right to take into consideration the character and the previous acts and conduct, if any, of the person to be arrested.  What may have been in the mind of the officer in making the arrest, and while he may have heard various rumors which made him apprehensive, and while third parties may have told him of the previous conduct of the appellant and of his character, yet the appellant was being tried for the crime that he committed, if any.  The matter must be viewed from his standpoint at the time; conclusions formed in the mind of the officer may be erroneous, they may have been founded upon rumors that had no foundation in the world, yet, because the officer's mind had been led by these rumors to reach the conclusion that the appellant was of a dangerous character, and that his acts and conduct were that of a lawless man, this would not authorize him to make an unlawful and an unwarranted assault upon the appellant.  Nor would it in any way abridge the right of the appellant to act upon the appearance of danger at the time.  Furthermore, we think that this was a charge upon the weight of the evidence.  We think it had a strong tendency to impress the jury with the belief that the court believed that the previous acts and conduct of the appellant would give the witness Thomas and the witness Smothers more right than they would have, and gave them the right to resort to means to effect the arrest of appellant that ordinarily would not exist.

6.  We think the court was correct in charging the jury that a peace officer has the right to summon assistance to aid him in the discharge of his duty, but we think that the court erred in telling the jury that a peace officer would have this right when he "reasonably believes he

is not able to arrest a party who it is his duty to arrest." We think this was prejudicial to the appellant and should not have been given. The court could have simply directed the jury that the witness Smothers had the right to call in any assistance that he desired to execute process, but as to the reasonable belief of the witness that he was not able to make an arrest, was throwing into the case a weight and a burden that was injurious to the rights of the appellant in the case. We also think the court erred in charging the jury that it is the duty of the officer to make known to the accused under what authority the arrest is made "unless by the acts or conduct of the accused himself such officers are precluded from making known such authority." There was no such issue as this in the case. Said charge was upon the weight of the evidence, was not supported by any evidence in the case, and there was no proof that the officer was prevented from making known his authority. The officer says as soon as the appellant came in sight he, the officer, threw his gun down on him and told him to hold up his hands. He did not offer to show his authority. Therefore, we think that this was prejudicial to the rights of the appellant and should not have been given.

7. The court further charged the jury as follows: "If you believe from the evidence in this case that prior to the shooting certain persons living in defendant's community had threatened to inflict unlawful violence upon the defendant, or if such threat was communicated to and believed by defendant, whether made in fact or not, and you should further believe that when said officers approached defendant in his house, said defendant had no knowledge of their capacity or purpose, and you should further believe from the evidence that at such time said defendant reasonably believed that said two parties were not officers there to lawfully arrest him, but were said parties whom he believed had threatened him there for the purpose of making an unlawful attack upon him, and if you should further believe that at such time said two parties, or either of them, did or was in the act of doing some act, or was making some demonstrations manifesting an intention to carry out such threats, if any, and the defendant then reasonably believed, viewing the matter from his standpoint," etc. This charge is objectionable because it makes defendant's rights depend upon his knowledge of the capacity or purpose of the officers not being there.

8. We think that the warrant of arrest in this case was sufficient. The warrant charged that appellant was guilty of an offense of unlawfully whipping a child. This would be an offense that the justice of the peace would not have a right to try, as this would be an aggravated assault, and he was sitting simply as a magistrate to make an examination and inquire as to whether an offense had been committed and that the warrant issued by him was sufficient for all purposes. We think that the officer had the right to show by what authority he

was at appellant's house, and if he could do so to show that appellant knew that he was there.

9.    Bill of exceptions No. 5 is to the action of the court in permitting the district attorney to examine the witness, Viola Ellis, and in denying appellant the right to make objections while said witness was testifying, and to the court refusing to allow appellant to make objections and in letting said witness go ahead and detail all the circumstances as to what transpired between herself and her mother in the absence of appellant. As to the conversation had between her mother and appellant, the appellant threatening to whip her mother, and then after the witness had gotten through detailing all the circumstances the court gave a verbal instruction to the jury that they would not consider many of the statements that occurred between appellant and his wife as detailed by this witness, and that they would simply confine themselves to the consideration of the witness' testimony wherein she spoke about what the appellant said he would do if the officers came there, and that all other testimony was not admissible for any purpose whatever. We think the practice is not conducive to the fairness of a trial that ought to obtain where a witness is permitted to detail facts and circumstances before the jury, some of which are illegal and not admissible and not allow counsel to object at the time the illegal and inadmissible testimony is offered, and then after all the testimony is in for the court to direct the jury not to consider certain parts of the testimony. This might not be cause for reversal, yet where it is in the power of the court to control and to keep out illegal testimony it ought not to be admitted. The court reserved the right to sift the testimony after it has all been detailed by the witness. The better practice would be to have the jury retired, let the witness then give the whole of the testimony and then the court direct what shall be admissible. It is sometimes very hurtful to allow illegal testimony to go before the jury, especially when this testimony is of a character that is likely to inflame the minds of the jury, and we would suggest to trial courts that the defendant ought to be safeguarded by not allowing inadmissible testimony to go before the jury, and where it can be done the court ought to sustain objections made at the time offered. We find also this qualification to the bill: "There was strong evidence before the court showing that this witness had been scared, intimidated and terrorized by the defendant, and the district attorney assured the court that the questions and answers were both pertinent and relevant, and counsel for defendant continued to interrupt the witness with continuous and repeated objections every time she attempted to answer until she became so confused and scared she could hardly answer, and the court then permitted her to answer without further interruption."

10.    We think the court also erred in permitting the State, over the appellant's objections, to prove by the witness, Viola Ellis, that her stepfather had been indicted for whipping Benny, who was witness'

little brother. This was an extraneous crime and ought not to have been admitted.

11. Bill of exceptions No. 7 is to the action of the court in allowing the district attorney to ask the witness, Viola Ellis, the following question: "Viola, had Mr. Owen whipped your little brother that day or the day before?" We think this testimony highly prejudicial to the appellant in this case and that the same ought not to have been admitted.

There are several other bills of exceptions in the record, but we do not deem them of sufficient importance to be noticed; as the matters complained of are not likely to occur upon another trial. For the errors indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Davidson, Presiding Judge, absent.