## H. W. ROBERSON v. UNITED STATES.

No. A-177.   Opinion Filed November 23, 1910.

1.   ARREST—Warrant—Requisites. Under the law in force in the Indian Territory prior to statehood a warrant of arrest, to be valid and to justify an officer in acting thereunder, must either name or describe the person to be arrested.

2.   SAME—Necessity of Warrant—Misdemeanor. A peace officer may lawfully arrest without a warrant for a misdemeanor committed in his presence.

3.   ARREST—Duty of Officer to Inform Person of Intent. Under section 1350, Ind. Ter. Stat., a peace officer in making an arrest should inform the person about to be arrested of the intention to arrest him and the offense for which he is arrested; but this was not required where the person to be arrested knew the officer's official character and was committing an offense in the officer's presence.

4.   ASSAULT AND BATTERY—Resisting Arrest—Self-Defense. A person about to be arrested, who knows the officer's official character and his intention to arrest him, cannot assault such officer upon his first uttering a word, and justify his act on the ground that the attempted arrest was illegal in that the officer did not inform him of his intention to arrest and for what offense the arrest was to be made.

5.   SAME—Resisting Arrest Without Warrant. Where an officer without a warrant, attempts an arrest for a misdemeanor believed by him to have been committed in his presence, but which in fact was not committed, the person to be arrested, if he knew the officer's official character and his intention, is not justified, merely on the ground that he is innocent of the offense, in assaulting the officer upon the latter's first uttering a word, without the arrested party's making any explanation, and without

his either inquiring the purpose of the arrest or giving the officer an opportunity to state it.

6. **SAME—Illegality of Arrest—Evidence.** Where a defendant is on trial for an assault committed upon an officer in resisting arrest, and he contends that the attempted arrest was illegal, it is competent for the prosecution to introduce evidence tending to show that it was legal.

7. **ARREST—Right to Use Force.** An officer has no right, in the absence of resistance or flight, to use any force or violence upon one whom he is arresting for any offense; and also has no right to use a deadly weapon upon one whom he is attempting to arrest for a misdemeanor and who does not resist but merely flees.

8. **ASSAULT AND BATTERY—Resisting Arrest—Self-Defense.** The mere fact that a known officer in making an arrest for a misdemeanor has a pistol in his hand, will not alone and of itself justify the person to be arrested in shooting at the officer.

9. **SAME.** Where a person about to be arrested makes no effort to resist or injure the officer, and the latter nevertheless makes such a demonstration with his pistol as would cause a reasonable man in like situation to believe that he is about to be killed or seriously injured, and the arrested party perceives such demonstration and honestly believes that he is about to be killed or injured by the officer, he is justified in shooting the officer, if he acts in good faith, under the influence of such belief, and not in a spirit of malice or revenge.

10. **SAME.** Where a person to be arrested for a misdemeanor offers no resistance or violence towards the officer, but merely flees or attempts to flee, and thereupon the officer either shoots at him or makes such a demonstration as would cause a reasonable man in like situation to believe that the officer was about to shoot at him, and such person thereupon shoots the officer, honestly believing that unless he does so he will probably be killed or seriously injured, his act is justifiable.

11. **INSTRUCTIONS—Requests—Duty to Instruct on Material Issues.** Where an instruction requested by the defendant is not in proper form, but pertains to a material issue in the case as made by the evidence, the court should correct it and give it in proper form, if he has not otherwise instructed upon that issue; and after such request it is error for him to fail or refuse to give an instruction upon such issue.

(Syllabus by the Court.)

*Appeal from District Court, Grady County; Frank M. Bailey, Judge.*

4 Cr.—22

H. W. Roberson was convicted of an assault with intent to kill, and he appeals. Reversed and remanded.

*Bond & Melton, Ray & Cunningham,* and *A. L. Herr,* for plaintiff in error.—Citing: *Hughes v. Com.* (Ky.) 41 S. W. 294; *Lynch v. State* (Tex.) 57 S. W. 1130; Wharton on Homicide, secs. 408, 409, 500; *Hardin v. State.* (Tex.) 49 S. W. 607; *State v. Sigman* (N. C.) 11 S. E. 521.

*Chas. West,* Atty. Gen., and *Smith C. Matson,* Asst. Atty. Gen., for the State.

RICHARDSON, JUDGE. On August 23, 1907, plaintiff in error was indicted in the United States Court for the Southern District of the Indian Territory at Chickasha, for an assault with intent to kill. Upon the admission of Oklahoma into the Union the cause was transferred to the District Court of Grady County. It was tried during the January, 1909, term of said court and resulted in a judgment of conviction, to reverse which this appeal has been taken.

There was a saloon known as the Line Saloon situated a few miles from Chickasha, Indian Territory, on the Oklahoma side of the former boundary line between the two territories. Section 8 of the Act of Congress approved March 1, 1895, (Ind. Ter. Stat., sec. 52,) made it an offense, punishable by a fine not exceeding $500.00 and imprisonment for not less than one month nor more than five years, for any person to carry intoxicating liquor of any kind into the Indian Territory. During the evening of January 7, 1907, Burke and Burney, deputy United States marshals residing in Chickasha, procured some warrants for the arrest of "John Doe," and started out toward the Line Saloon. They stopped on the side of the road about a mile from Chickasha for the purpose of intercepting and arresting any person who should pass there bringing liquor into the Indian Territory. They testified that about nine o'clock they heard a wagon coming from the direction of the saloon, whereupon they took positions on opposite sides of the road. When the wagon, a light, one-horse vehicle,

came within twenty-five or thirty feet of the officers, they recognized plaintiff in error. When the latter got within twenty feet of the officers, he began whipping up his horse. Burke stepped up and looked into the wagon as it got even with him, and saw lying therein a gunny sack filled, as he thought, with bottles of whisky. He then said, "Hold up, Mr. Roberson, hold up." Whereupon plaintiff in error raised a pistol and shot him in the right side, and immediately fired at him again, but missed him. The horse was running by this time, still in the direction of Chickasha, and the officers fired at the man and wagon. The officers followed the wagon and found it in the road about a quarter of a mile from the scene of the difficulty, the horse lying dead from a shot, still harnessed thereto. Two bullet holes were found in the end-gate of the wagon. The officers then went on to Chickasha. Plaintiff in error was soon found and arrested, and a bottle of whisky was taken from his person. The officers, in company with the chief of police of the city, then returned to the wagon, and in a ravine about twenty-five steps from the horse and wagon they found a gunny sack containing twenty-seven bottles of whisky of the same brand and in bottles of the same size as that found on plaintiff in error. Sixteen of the bottles were intact; the remainder were broken, and there were two holes in the sack, presumably made by the bullets which went through the end-gate of the wagon. It was shown that plaintiff in error had known both Burke and Burney for some time, and knew that they were peace officers.

Plaintiff in error testified that he went to the country that afternoon to look at a piece of land, and after seeing the land went to the Line Saloon. There he took one or two drinks of whisky, but brought none away with him; that he had no sack in his wagon, and that he obtained the whisky found on his person after he got back to town. He testified that as he was driving along two men stepped out, one from each side of the road; that he did not recognize them, and they made no statement as to who they were or what they intended. Believing that he was about to be robbed, he whipped up his horse to get away, when one of

the men said, "Hold up, or I will shoot," and immediately followed the statement with a shot at plaintiff in error; that the latter did not shoot first, but returned the officer's fire for the sole ·purpose of saving himself from being killed or wounded and from being robbed.

Plaintiff in error's first contention is that ·the· verdict and judgment herein were contrary to the law and the evidence. This .contention is predicated upon the assumption that the attempted arrest ·was illegal, first, because the officers· had no ·sufficient war- ·rant· of arrest; second, because the introduction of intoxicating liquor into the Indian Territory was only a misdemeanor; and if plaintiff in error .was guilty of that offense, that fact was not known to the officers, so that the offense could be said to have been committed in their presence; and third, because the officers did not inform plaintiff in error of the fact that they were officers, their intention to arrest him, and the offense for which the arrest was to be made. It is true that the "John Doe" warrant held by the officers, which neither named nor described plaintiff in error, was no authority for the latter's arrest (*West v. Cabell*, 153 U. S. 78, 38 L. Ed. 643) ; and the trial court so held, and excluded the warrant .from evidence. Section 1345 of the Indian Territory Statutes provided that, "A peace officer may make an arrest * * * * without a warrant, where a public offense is committed in his presence, or where he has reasonable grounds for believing that the person arrested has committed a felony." The introduction of intoxicating liquor into the Indian Territory was a public offense, a misdemeanor under the laws of the United States. And if plaintiff in error was introducing liquor into the Indian Territory on the occasion in question, he was committing a misdemeanor in the presence of the officers; and in such case ·the statute authorized them to arrest him. Section 1350 of the Indian Territory Statutes provided that "the person making the arrest shall inform the person about to be arrested of the intention to arrest·him, and the offense for which he is arrested," and it is insisted that the attempted arrest was illegal because· this pro-

vision of the statute was not complied with. There are many
authorities to the effect that a compliance with such provision is
not required where, as we are now assuming, the person about
to be arrested knew the officer, knew that he was an officer, that
he intended to arrest him, and where the person about to be ar-
rested was then committing an offense in the officer's presence.
*Tiner v. State,* 44 Tex. 128; *Plasters v. State,* 1 Tex. App. 673;
*Rex v. Howarth,* 1 Moody C. C. 207; *King v. State,* 89 Ala. 43;
*People v. Durfee,* 62 Mich. 487; *People v. Nash,* 1 Idaho, 206;
*Rex. v. Whithorne,* 3 Car. & P. 394; *Rex. v. Payne,* 1 Moody C. C.
378; *Rex v. Davis,* 7 Car. & P. 785; *Shovlin v. Com.,* 106 Pa. 369;
*Com. v. Weathers,* 7 Kulp 1; *State v. McAfee,* 107 N. C. 812, 10
L. R. A. 607; *Wolf v. State,* 19 Ohio St. 248. And we think the
rule sound. But granting the necessity of the officer's giving that
information, he must have some opportunity to communicate it;
and a person who knows the officer and the intention to arrest, and
is committing an offense in the latter's presence, as the jury could
legitimately have found from the evidence to have been the case
here, will not be permitted to shoot the officer upon his first utter-
ing a word, and then contend that the attempted arrest was illegal
because the officer did not go through with a formality which the
person himself thus prevented. And even if plaintiff in error was
not committing the offense for which the attempted arrest was
made, yet if he knew the officers, knew that they were officers, and
that they intended to arrest him, and had no reasonable cause to
believe that they intended to do him any personal injury, he would
not be permitted to shoot them upon their first uttering a word,
and that without making any explanation himself and without
either inquiring the purpose of the arrest or giving them an oppor-
tunity to state it, in short, without knowing or caring by what
authority they were acting. To hold otherwise is to place a prem-
ium upon resisting an officer. How did he know that they did not
have a valid warrant? How did he know upon what evidence they
were acting? How did he know but that they had reasonable
ground to believe that he had committed a felony and were about

to arrest him on that account? Of course, he may have known that he had not committed a felony, but his knowledge and the officer's reasonable ground of belief are two different things; and the latter and not the former, under the statute, determines the legality of an arrest in such case. Assuming, as the jury could have found from the evidence, that plaintiff in error knew the officers and their intention to arrest him, then under the evidence for the prosecution he shot altogether too quickly, even if he was not committing that particular misdemeanor; and if he was committing it, in the absence of reasonable cause for believing that serious bodily harm was about to be inflicted upon him, he had no right to resist the arrest at all. The verdict was not contrary to the evidence.

It is next contended that the court committed error in certain of the instructions given to the jury, but an examination of the case-made fails to disclose an exception to any of the instructions given; and we shall not therefore consider the assignment.

It is also urged that the court erred in admitting the evidence in regard to finding the sack of whisky in the ravine about 25 steps from the wagon, the contention being that this evidence was relevant to no issue in the case. The evidence was competent as proof of a circumstance tending to show that plaintiff in error was bringing this sack of whisky into the Indian Territory; that the sack which Burke saw in the wagon was what he thought it was, namely, a sack of whisky; and that plaintiff in error was committing an offense in the presence of the officers.

Plaintiff in error requested the court to instruct the jury that at the time the shot in question was fired by him his attempted arrest by said Burke and Burney was an unlawful and unauthorized act, and that plaintiff in error had a right under the law to resist said unlawful attempt. This instruction the court refused to give, and error is assigned upon his refusal. We have already considered this matter, and we hold that the court did right in refusing the instruction.

The court instructed the jury as to plaintiff in error's right

to fire the shot in his apparent necessary self-defense, if he 'did not know the officers and their purpose, but had reasonable cause to believe and did believe that he was about to be killed, injured or robbed. Plaintiff in error then requested and the court refused the following instruction, to which refusal an exception was taken:

"You are instructed that under the law in force in the Indian Territory at the time the alleged shooting took place, the introducing into the Indian Territory of intoxicating liquor was a misdemeanor only, and you are further instructed that an officer, even though he was authorized under the law to make an arrest, has no right in making or in attempting to make an arrest of a person charged with a misdemeanor, in the first instance and before any violence is used against him, to prevent the person whom he is attempting to arrest fleeing from or escaping such arrest by the use of a deadly weapon or by force of arms. If therefore you find from the evidence in this case that the prosecuting witness, Thos. Burke, in conjunction with one Ed Burney, in attempting to arrest the defendant for introducing into the Indian Territory intoxicating liquors, in the first instance and before any violence was used against them by the defendant, drew a deadly weapon in order to prevent the defendant from escaping such arrest, then and in that event, the defendant had a right to meet force with force, and if under such circumstances, at the time the shot in question was fired by the defendant, viewed from his standpoint as a reasonable man he had reasons to believe and did believe from the acts of the said Thos. Burke and Ed Burney that he was in immediate danger, real or apparent, of receiving at their hands great bodily harm unless he submitted to such arrest, such shooting by the defendant would be justifiable under the law and you should find the defendant 'not guilty,' even though you may believe from the evidence that the defendant knew who said Thos. Burke and Ed. Burney were, knew that they were U. S. deputy marshals and knew that they intended to arrest him."

We think the instruction should not have been given in the form requested. While an officer has no right, in the absence of resistance, to use any force or violence upon one whom he is arresting, and also has no right to use a deadly weapon upon one whom he is attempting to arrest for a misdemeanor and who flees; yet where an offense is committed in his presence, he *is* empowered

and it is his duty to arrest for it. If resistance be offered, the party resisting is in law the aggressor, and not the officer; and in such case the officer may use all force reasonably adequate and necessary to overcome the offered resistance. And he is not required to engage with the party about to be arrested upon equal terms. He may lawfully anticipate resistance in the sense that he may prepare himself to overcome it if it be offered. And the mere fact that a known officer intending to arrest for a misdemeanor, his intention being known, has a pistol in his hand, will not alone and of itself justify such person in shooting at the officer.

But the court should have instructed the jury in substance that even if plaintiff in error knew the officers and their intention to arrest him, yet if he made no effort to injure them or either of them, and nevertheless the officers made such a demonstration with their pistols as would cause a reasonable man in like situation to believe that he was about to be killed or seriously injured, and plaintiff in error perceived said demonstration and then and there honestly believed that unless he shot said officer his life would be taken or that he would receive great bodily injury, and that he fired the shot under such circumstances and not in a spirit of malice or revenge, then in that event the jury should acquit. The court should also have instructed the jury that if plaintiff in error was offering no violence toward the officers, but was merely fleeing or attempting to flee, and thereupon the officers either shot at him or made such a demonstration as gave plaintiff in error reasonable cause to believe that they were about to shoot at him, and plaintiff in error fired the shot in question under those circumstances, not in a spirit of unlawfulness or revenge, but honestly believing that unless he did so he would probably be killed or seriously injured, then in such case they should acquit. And we think that the requested instructions was sufficient to call the court's attention to this phase of the case and to require an instruction upon it. It is the law that an officer is not justified in shooting at one charged only with a misdemeanor who is merely attempting to flee; and if he does so, such person has a right to defend himself

against this unauthorized use of force and violence upon him, even
to the taking of the officer's life if it reasonably appears necessary.
Of course, if, when an officer attempts to arrest one charged only
with a misdemeanor, such person resists the arrest and in so
resisting uses or is apparently about to use force or violence upon
the officer, the latter would have the right of self-defense even to
the extent of taking the life of his assailant, if necessary.   In this
case it was for the jury to say upon a consideration of all the evi-
dence whether or not the officer fired first.   If it was a fact that
the defendant was only trying to escape and that the officers there-
upon began to shoot at him, then the defendant had the right to
shoot in defense of himself.   And we think that the court should
have submitted this question to the jury under proper instructions.
The court did instruct the jury that an officer, in making an arrest
for a misdemeanor committed in his presence, was permitted to
use only such force as to an ordinarily prudent person would ap-
pear reasonably necessary under the circumstances to effect the
arrest; and that, if an officer in making the arrest of a person
charged with a misdemeanor unnecessarily uses such force as to
endanger the life or limb of such person, the use of such unneces-
sary force would constitute an assault, and in such case the party
to be arrested would be justified in using such means as to a rea-
sonable and prudent man under such circumstances would appear
necessary to protect life and limb.   This instruction was well
enough so far as it went.   But it is not applicable to a case where
no resistance is offered, but where the person charged with a mis-
demeanor only attempts to flee, as plaintiff in error testified that he
did in this case.   Whether his testimony was true was a question
for the jury to determine.   It raised this issue, and the court
should have submitted it to the jury by proper instructions.   Re-
versed and remanded for a new trial.

FURMAN, PRESIDING JUDGE, and DOYLE, JUDGE, concur.