## JOHN W. SHARP v. UNITED STATES.

No. A-859.   Opinion Filed November 11, 1911.

(118 Pac. 675.)

1.  HOMICIDE—Justification—Homicide in Making Arrest. A peace
officer has no lawful right to shoot and kill a person that is
attempting to escape arrest for a minor offense, by running away,
and, if he does so, he will be guilty of murder or manslaughter
as the case may be.

2.  HOMICIDE—Justification—Homicide in Making Arrest. A peace
officer in attempting to arrest a person for an offense less than
a felony cannot shoot or kill, unless the offender resists to such
an extent as to place the officer in danger of loss of life or
great bodily harm.

(Syllabus by the Court.)

*Appeal from District Court, Adair County; John H. King, Judge.*

John W. Sharp was convicted of manslaughter, and appeals.
Affirmed.

See, also, 3 Okla. Cr. 24, 104 Pac. 71.

*J. H. Huckleberry, Wm. Cravens,* and *O. L. Rider,* for
plaintiff in error.

*Smith C. Matson,* Asst. Atty. Gen., for the State.

DOYLE, J.   On December 12, 1906, the plaintiff in error,
John W. Sharp, was indicted in the United States Court for

the Northern District of the Indian Territory at Sallisaw for the murder of one William Powell on the 28th day of November, 1906, at Tahlequah, within said Northern district. Upon the admission of Oklahoma as a state the cause was duly transferred to the district court of Cherokee county. On the application of the defendant for a change of venue, said cause was transferred for trial to the district court of Adair county. Upon his trial the defendant was convicted of manslaughter. From this judgment he appealed, and on September 27, 1909, the cause was reversed and remanded. The opinion of the court in the former appeal of this case will be found in 3 Okla. Cr. 24, 104 Pac. 71.

On his second trial he was again convicted of the crime of manslaughter and sentenced to serve a term of 10 years in the penitentiary. The judgment and sentence was pronounced and entered on February 19, 1910. To reverse this judgment an appeal was taken by filing in this court on August 13, 1910, a petition in error with case-made. No briefs have been filed. The cause coming on to be heard on the regular assignment, November 10th, and no appearance being made for plaintiff in error, the Attorney General moved that the cause be affirmed for failure to prosecute the appeal. Without a brief being filed or oral argument made, we are not advised as to what the plaintiff in error relies on for a reversal of this judgment, and, while we do not consider it a necessary duty of the court to review a cause under these conditions, nevertheless, in view of the grave character of the case, we have carefully examined the entire record.

The undisputed facts of the case are that the defendant, in the presence of several persons, shot and killed William Powell, on the streets of Tahlequah about 11 o'clock p. m. on the day charged in the indictment.

The proof on the part of the prosecution shows that the deceased, a school boy about 16 years of age, attended a show in the opera house that evening, and after it was over, together with two or three other boys, was standing on Main street talking. The defendant, a police officer of the city of Tahlequah, passing by, made some remark. The deceased answered saying

that he believed he was a very poor policeman and started to run across the street toward his home. He was pursued by the defendant, who called upon him to halt and fired a shot. The deceased still continued to run. The defendant paused for a moment and fired another shot, which struck the deceased. The ball entered a little to the right of the spine, just below the shoulder blade, passing out on the right edge of the sternum, and almost immediately produced the death of the deceased. The defendant, coming up to where the deceased fell, said: "Get up from there!" And the boy answered: "I cannot. You shot me, and you shot me for nothing." The defendant then said: "God damn you! If you had stopped when I told you to I would not have shot you." There was evidence tending to show that the defendant was under the influence of whisky at the time he did the shooting.

The defendant, testifying as a witness on his own behalf, stated: That he was a deputy city marshal of Tahlequah. That on the night in question he heard some fellows blackguarding and swearing. He walked up the street to where they were standing in front of Scott's restaurant and said to them: "Boys, I am getting tired tonight. I am pretty near worn out, and, if you don't go in, I will lock you all up." Defendant further testified that: "This young man I didn't know was standing 10 feet from me and turned to me and says, 'Who are you?' and I says, 'I am the city marshal, here,' and he says, 'Who are you city marshal for?' and I says, 'For this town and everybody that comes here.' I says, 'What kind of a marshal did you think I would be?' and he says, 'I think you are a God damned poor one,' and he struck a run, and I started and took after him,' and commenced hollowing halt at him and got about middle ways of the street. I was running and jerked my gun and fired right up in the air. I run on about—Just before I got to the alley, I had my gun in this hand, and stumbled, and then the gun fired. I had no idea of hurting the boy at all. I had no idea of doing it, and went on, and walked on down there close to him, pretty close to him, and stopped and asked him— I says, 'Get up!' and

he spoke and says, 'I can't,' or something to that amount." He further testified that he was not drunk that night, athough he had tasted some whisky; that when he was running after the boy he was attempting to arrest him for what he had said.

His defense was a denial of any intent to hit the deceased when he fired the fatal shot and the improbable statement that the fatal shot was fired accidentally. On the testimony of the defendant alone there can be no doubt of his guilt of the crime of which he stands convicted.

The defendant doubtless acted under the erroneous belief that as a peace officer he had a lawful right to shoot and kill the deceased when he failed to obey his commands to halt. It is a common belief that erroneously prevails among petty peace officers that, if an offender runs from an officer attempting his arrest for a misdemeanor and does not stop on being commanded to halt, the officer may lawfully shoot him. Officers should know and understand that they have no authority to resort to the use of firearms or dangerous weapons in making arrests for offenses other than felonies, unless the offender resists the arresting officer. In that event all force necessary to overcome his resistance may be employed. Peace officers should always use great caution and prudence in the performance of their duties, and should never forget that it is only extreme necessity that will justify the taking of human life.

Mr. Bishop says:

"If one committing a felony flies from an officer attempting his arrest, and will not stop on being commanded, the latter to enforce compliance may shoot him; but, if the offense is a misdemeanor, he has no right to take this extreme measure." (Bish. New Cr. Pro. sec. 159, par. 3).

"Generally speaking, in misdemeanors it will be murder to kill the party accused, for flying from the arrest, though he cannot otherwise be overtaken, and though there be a warrant to apprehend him; but under circumstances it may amount only to manslaughter, if it appear that death was not intended." (Bish. New Cr. Law, sec. 649).

Under the testimony of numerous witnesses that the defendant paused and deliberately fired the fatal shot, the defendant

6 Cr.—12

is guilty of the wanton and brutal murder of an inoffensive boy. Fortunately for the defendant, however, the jury in mercy, or in a mistaken view of the law, or of the facts, found the defendant guilty of the lesser crime of manslaughter. This it had a right to do.

An examination of the instructions shows that they fully and fairly state the law of the case.

From a careful examination and consideration of the entire record we are clearly of the opinion that no prejudicial error was committed by the trial court.

The judgment of the district court of Adair county is therefore affirmed, and the cause remanded thereto, with direction to enforce its judgment therein.

FURMAN, P. J., and ARMSTRONG, J., concur.