GEORGE H. ROBSION v. STATE.

No. A-8132. March 4, 1932.
(9 Pac. [2d] 54.)

Guy P. Horton and Frederick, Mounts & Chamberlin, for plaintiff in error.

J. Berry King, Atty. Gen., Smith C. Matson, Asst. Atty. Gen., and D. R. Rutherford, Co. Atty. for the State.

CHAPPELL, J. Plaintiff in error, hereinafter called defendant, was convicted in the district court of Jackson county of the crime of murder in the killing of Elmer Car-

ter, and his punishment fixed by the jury at life imprisonment in the state penitentiary.

The evidence of the state was that the defendant, with Vernon L. Robsion, his brother, and Ernest Jackson, was traveling through the country in a truck, accompanied by a Chrysler roadster; that as they passed through Tillman county they were observed by L. F. Barbee, a deputy sheriff of that county, who knew them; that, from what he saw and knew, he believed that the defendants were violating the prohibitory liquor laws by transporting intoxicating liquor or a still; that Barbee called the marshal at Tipton and also the sheriff's office at Altus; that Elmer Carter, a deputy sheriff of that county, answered the phone and was informed by Barbee that these parties were going into Jackson county, and that he believed they were violating the prohibitory liquor laws; that Carter called Joe Whitt, an officer of the state at Altus, to accompany him; that Carter and Whitt proceeded south from Altus on the main highway some five or six miles, where they met the truck going north on the highway, which they recognized by the description that had been given them; that they turned their car around and came back following the truck; that they intended to follow the truck into Altus and then make the arrest; that Vernon L. Robsion and Ernest Jackson were armed with pistols and the defendant with a Winchester rifle; that there had been some conversation between defendant and his confederates about whether Officer Barbee would turn them in; that the car then following them was probably an officer's car; that defendant at that time was standing on the running board of the truck with the rifle in his hand; that defendant was advised to put the gun away, but he refused; that defendant told the driver of the truck to turn west on a byroad, and that, if the car followed

them, they would know it was officers; that at the next corner the truck turned on to a byroad, and that defendant then said, in substance, that he had been punched by the officers all he was going to be, that he had lost all he was going to lose, and that before he would lose anything else he would shoot it out with them; that there was further discussion as to one of them taking the truck and the others trying to escape, but defendant refused to do that; that the officers honked their horn and ordered them to stop and told them they were under arrest; that defendant stepped or was pushed off the running board of the truck, 15 or 20 steps from where the truck actually came to a stop; that defendant began to fire at the officers with this rifle from a ditch by the side of the road; that one shot struck Officer Whitt and rendered him unconscious; that Carter arrested one of the parties in the truck and brought him around in front of the officers' car, where another shot from defendant's rifle struck Carter about an inch to the right of the spinal column, and that the bullet ranged slightly upward and came out somewhere near the left side of his body; that Carter went about 125 yards from the scene of the shooting and died soon after reaching the house.

Defendant, testifying for himself, admitted that he had been engaged in the business of manufacturing whisky for more than a year; that he was caught on the 9th day of March by a federal officer, at Lawton; that later he made a still and made arrangements with his codefendants to go over into Texas and make some whisky; that they loaded their truck with the still and started for Quanah; that defendant followed the truck in his car; that he owned the rifle and took it with him; that he saw Officer Barbee's car following the truck and he speeded up in his car and got away; that when the truck stopped

he rolled off into a ditch and somebody began to shoot; that one of the shots struck him in the back and another in the leg.

The defendant Ernest Jackson turned state's evidence and contradicted the defendant in all of his evidence as to what occurred after the officers began to follow them.

Defendant contends, first, that the trial court erred in refusing to permit defendant to show the disposition of the state's witness Whitt in regard to being quick to pull his gun on the slightest provocation, and his disposition to shoot and raise rackets.

An examination of the record discloses that the court refused to permit the witness to answer questions propounded by defendant's counsel upon these matters. When the court sustained the state's objection to the introduction of this evidence, counsel announced he was trying to make a record, but, upon the jury being excused, failed to dictate into the record what he expected to prove by the witness if permitted to answer the questions. The proper procedure is for counsel to dictate into the record what he expects to prove by the witness and save his exceptions to the ruling of the court thereon.

When a defendant seeks a reversal on account of alleged error on the part of the trial court in refusing to admit evidence offered, the record must show what this offered evidence was, so that the court can determine whether or not it was material and proper testimony, and as to whether or not defendant was injured by its exclusion. White v. State, 4 Okla. Cr. 144, 111 Pac. 1010; Warren v. State, 6 Okla. Cr. 2, 115 Pac. 812, 34 L. R. A. (N. S.) 1121; Francis v. State, 22 Okla. Cr. 287, 211 Pac.

433; Sewell v. State, 38 Okla. Cr. 224, 260 Pac. 84; Dobbs. v. State, 39 Okla. Cr. 368, 265 Pac. 661.

No offer of proof being contained in the record and no ruling thereon, the petition presents no question for this court.

It is next contended that the officers had no right to make the arrest.

The theory of the state was that, since the offense which was being committed was a felony under the prohibitory liquor laws of the United States, therefore the officers had a right to make an arrest without warrant. The court in instruction No. 15 told the jury that, if they found the defendant was engaged in the commission of a felony in violation of a federal statute, they had a right to make the arrest without a warrant.

The trial court erred in giving the instruction complained of, but the giving of the same was not reversible error. The mere fact that the trial court placed the right of the officers to make the arrest upon an improper ground does not require a reversal of the case. Section 2822, C. O. S. 1921.

The doctrine of harmless error is discussed in nearly every decision rendered by this court, but it is especially elaborated in the following cases: Ostendorf v. State, 8 Okla. Cr. 373, 128 Pac. 143; Jones v. State, 10 Okla. Cr. 216, 136 Pac. 182, 137 Pac. 121.

The letter and spirit of the law is that, if the defendant has had a fair trial, and if the court is satisfied that the conviction is sufficiently supported by competent evidence, and that the verdict against the defendant was not reached by error as a result of passion and prejudice,

the conviction should be affirmed. Atchison v. State, 3 Okla. Cr. 295, 105 Pac. 387; Offitt v. State, 5 Okla. Cr. 49, 113 Pac. 554.

When an error has been committed upon the trial of a case, it is the duty of the court, upon investigation of the whole record, to determine whether or not defendant suffered any material injury from such error. Unless such injury appears, the error will not be ground for reversal. Coleman v. State, 6 Okla. Cr. 253, 118 Pac. 594; Hooper v. State, 7 Okla. Cr. 43, 121 Pac. 1087; Crowell v. State, 42 Okla. Cr. 392, 276 Pac. 518.

Defendant next contends that the court erred in giving instruction No. 10, which reads as follows:

"It is the duty of an officer in attempting to make an arrest to inform the party of his authority and cause of arrest if he is given an opportunity to do so, except, such is not required if the party is in the actual commission of a public offense at the time the arrest is attempted.

"It is the duty of all persons when he knows or has good cause to believe that an officer is attempting to effect his arrest to submit to said arrest without resistance, unless it reasonably appears to the party being arrested that the officer attempting the arrest was using unnecessary and unreasonable force and violence, and if it does so reasonably appear, then the person being arrested has the right to defend himself against such excessive force and violence even to the extent of taking life, if it appears reasonably necessary to him to so kill in order to ward off such excessive force.

"An officer, in attempting a legal arrest, has the right and it is his duty to use all necessary and reasonable force to effect said arrest, but he has no right to use excessive or unreasonable force in attempting an arrest."

In 2 R. C. L. 474, art. 32, the rule is stated:

"The right of a person to use force in resisting an illegal arrest is not unlimited. Unnecessary force may not be resorted to nor means of resistance adopted which are disproportionate to the effort made to take him into custody, and if such unlawful resistance culminates in a homicide, the party seeking to avoid arrest is guilty of manslaughter, and possibly of murder, for in resisting an illegal arrest no person has a right to kill the officer or private individual attempting to make the arrest."

"Where the arrest is made by a known officer and nothing is to be reasonably apprehended beyond a temporary detention in jail, resistance obviously cannot be carried to the extent of taking life."

"As a general rule it may be stated that the fact that an officer or citizen who is killed while attempting to make an arrest exceeded his authority, does not reduce the killing from murder to manslaughter, if the person arrested had no valid reason to believe himself in immediate danger of great bodily harm."

This court had this question under consideration in Roberson v. United States, 4 Okla. Cr. 336, 111 Pac. 984, and there said:

"Under section 1350, Ind. T. Ann. St. 1899, a peace officer in making an arrest should inform the person about to be arrested of the intention to arrest him and the offense for which he is arrested; but this was not required where the person to be arrested knew the officer's official character and was committing an offense in the officer's presence.

"Where an officer, without a warrant, attempts to arrest for a misdemeanor believed by him to have been committed in his presence, but which in fact was not committed, the person to be arrested, if he knew the officer's official character and his intention, is not justified, merely on the ground that he is innocent of the offense, in assaulting the officer upon the latter's first uttering a word, without the arrested party's making any explanation, and with-

out his either inquiring the purpose of the arrest or giving the officer an opportunity to state it.

"A person about to be arrested, who knows the officer's official character and his intention to arrest him, cannot assault such officer upon his first uttering a word, and justify his act on the ground that the attempted arrest was illegal, in that the officer did not inform him of his intention to arrest and for what offense the arrest was to be made."

In the body of the opinion, the court said:

"Even if plaintiff in error was not committing the offense for which the attempted arrest was made, yet if he knew the officers, knew that they were officers, and that they intended to arrest him, and had no reasonable cause to believe that they intended to do him any personal injury, he would not be permitted to shoot them upon their first uttering a word, and that without making any explanation himself and without either inquiring the purpose of the arrest or giving them an opportunity to state it, in short, without knowing or caring by what authority they were acting. To hold otherwise is to place a premium upon resisting an officer. How did he know that they did not have a valid warrant? How did he know upon what evidence they were acting? How did he know but that they had reasonable ground to believe that he had committed a felony and were about to arrest him on that account? Of course, he may have known that he had not committed a felony, but his knowledge and the officer's reasonable ground of belief are two different things; and the latter and not the former, under the statute, determines the legality of an arrest in such case. Assuming, as the jury could have found from the evidence, that plaintiff in error knew the officers and their intention to arrest him, then under the evidence for the prosecution he shot altogether too quickly, even if he was not committing that particular misdemeanor; and, if he was committing it, in the absence of reasonable cause for believing that serious bodily harm was about to be inflicted upon him, he had no

right to resist the arrest at all. The verdict was not contrary to the evidence."

In Heinzman v. State, 45 Okla. Cr. 305, 283 Pac. 264, this court said:

"The failure of a peace officer, in making an arrest for a felony, to inform in express terms the person sought to be arrested of his authority and the cause of the arrest, will not render his acts illegal, where the person about to be arrested knew the officer and that he was an officer and was acting as such."

The evidence in the case at bar does not make out as strong a case in favor of the defendant as the record discloses in Roberson v. United States or Heinzman v. State, supra. Here the record discloses that the officers had honked their horn and had called to the defendant and his confederates and advised them that they were under arrest, and had gotten out of their car for the purpose of making the arrest, but, before the officers could do anything else to effect the arrest of defendant, he fired upon them, killing deceased and wounding Whitt, the other officer, so badly that he was for a time unconscious. Defendant and his confederates knew they were officers; knew they were committing an offense in the presence of the officers and knew the officers were attempting to arrest them.

Under the facts disclosed by this record, defendant had no legal right to resist the arrest, and having done so, and in the act of resistance killed Officer Carter, he is guilty of murder as found by the jury. It was not error, therefore, for the trial court to give the instruction complained of.

The defendant complains of other errors, but they are all without substantial merit.

For the reasons stated, the cause is affirmed.

DAVENPORT, P. J., and EDWARDS, J., concur.