Steven CARTER, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A–17318.

Court of Criminal Appeals of Oklahoma.

March 6, 1973.

John R. Couch, Jr., Stillwater, for appellant.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., Kay Karen Kennedy, Legal Intern, for appellee.

## OPINION

BRETT, Judge:

Appellant, Steven Carter, hereinafter referred to as defendant, was convicted in the District Court of Payne County, Case No. CRM–71–655, with the offense of interfering with an officer in the performance of his duty, in violation of 21 O.S. 1971, § 267, with punishment fixed at a fine of $100.00. Judgment and sentence was imposed on November 11, 1971, and an appeal bond set in the amount of $250.00. A timely appeal has been perfected by defendant's court appointed counsel. Reversed and remanded.

It was charged by information that on September 9, 1971, the defendant, by means of violence, prevented a deputy sheriff, Kenneth Criner, from the performance of his duty in arresting Billy Carter, brother of defendant.

Briefly stated, the evidence established that the defendant, age 17, drove his brother, Billy Carter, age 15, to the City-County Health Clinic in Stillwater, Oklahoma, on September 9, 1972. Upon their arrival defendant remained outside while Billy Carter went inside the clinic. Once inside, Billy Carter was arrested by Deputy Sheriff Criner, who had a bench warrant for his arrest. After Billy Carter was handcuffed by the deputy, a doctor administered certain shots to him. The deputy then escorted Billy Carter outside where the defendant was waiting. Once outside, Billy Carter attempted to run, but was forced to the ground by the deputy. Billy Carter was then placed by the deputy in his patrol car, and defendant walked away toward his pickup. As the deputy walked around his automobile to get in, Billy Carter opened the door and ran away. The deputy ran after Billy Carter and placed his right hand over his pistol. According to the deputy, he did so to keep the gun from jostling as he ran. The defendant and his brother both testified that the deputy *threatened to shoot if Billy Carter did not stop running.* Mrs. Waldron, a nurse who was watching these events through a window of the clinic, testified she saw the deputy momentarily stop and place his hand on the gun as Billy Carter ran away.

According to the deputy, the defendant came up behind him and grabbed the deputy's arm, hollering that the deputy was not going to shoot his brother. The deputy testified that he replied to the defendant that he was not going to shot anyone, and that the defendant was interfering with an officer. The deputy then ran back to his patrol car and drove off in pursuit of Billy Carter, while the defendant went back to his pickup.

The single assignment of error on appeal is that the trial court erred in denying defendant's requested instructions relative to the defendant's theory that the defendant was acting in defense of his brother when he made contact with the deputy. It is defendant's contention that he believed the deputy was about to shoot his brother, and that since the officer was not justified in shooting the fleeing brother, a right of defense from an unwarranted assault arose, which would justify and excuse the defendant's contact with the deputy. The State contends the evidence does not support defendant's theory, thus it was not error for the trial court to refuse defendant's requested instructions.

As we see it, the issue ·is whether defendant's theory is legally sound and, if so, whether there is evidence to support the giving of such an instruction. The question is not whether the defendant was entitled to be acquitted on such grounds, since that would be a fact question for a jury under proper instructions.

The law recognizes that a person is privileged to defend a third person from

harm under the same conditions and by the same means as though under and by which he is privileged to defend himself, if he reasonably believes that the circumstances are such as to give the third person such a privilege of self-defense, his intervention is necessary for the protection of the third person, and the third person is a member of his immediate family or a person whom he is under a legal or socially recognized duty to protect. Restatement, Torts, § 76. 6 Am.Jur.2d, Assault and Battery, § 152. "One who goes to the aid of a relative or third person acts at his own peril, and his right to defend the other is coextensive with the other's right to defend himself at the time." McBroom v. State, 26 Okl.Cr. 352, 224 P. 210 (1924).

■ When an officer in making a lawful arrest uses more force or aggression than is reasonably necessary, the party so assaulted has the right of self-defense and may repel the attack with sufficient force to avert its threatened consequences, using no more force than is necessary. Martinez v. State, 142 Tex.Cr.R. 313, 152 S.W.2d 369 (1941). Owen v. State, 58 Tex.Cr.R. 261, 125 S.W. 405 (1910). 5 Am.Jur.2d, Arrest, § 94.

■ In making an arrest an officer may use all necessary means to effect the arrest. 22 O.S.1971, § 193. However, as this Court early observed an "officer has no right, in the absence of resistance or flight, to use any force or violence upon one whom he is arresting for any offense; and also has no right to use a deadly weapon upon one whom he is attempting to arrest for a misdemeanor, and who does not resist, but merely flees." Roberson v. United States, 4 Okl.Cr. 336, 337, 111 P. 984 (1910). "A peace officer has no lawful right to shoot and kill a person that is attempting to escape arrest for a minor offense, by running away, and, if he does so, he will be guilty of murder or manslaughter as the case may be." Sharp v. United States, 6 Okl.Cr. 350, 118 P. 675 (1911).

Thus, in theory a person would be privileged and justified to defend a relative from an unwarranted assault by an officer who is attempting to arrest that relative. An officer attempting to shoot a person who flees from his arrest for anything other than a felony would be such an unwarranted assault where the life of the officer is not endangered by the offender.

■ Relative to this theory, the facts in the instant case show that the defendant's brother fled from the deputy after the brother was arrested on a bench warrant. The deputy began running after the brother and in doing so placed his hand on his gun. The deputy said he did so to keep it from jostling. Defendant and the brother both testified *that the deputy threatened to shoot if the brother did not stop running.* The deputy testified that the defendant grabbed the deputy's arm, "hollering I wasn't going to shoot his brother." These facts, taken from the view of the defendant, indicate circumstances which would support the theory that the defendant sought to defend his brother from an unwarranted assault by the officer. Thus, one view of the evidence, if believed by a jury, would support defendant's theory of defense.

■ The defendant's requested instructions relative to this theory of defense, which as we have said was a material issue, were refused by the trial court. The court's instructions did not otherwise cover this issue or theory of defense. It is fundamental that the trial court must instruct on all material issues raised and having some basis of support in the evidence. Perkins v. State, Okl.Cr., 492 P.2d 383 (1971). Even if the trial court does not agree with the particular language of such instructions, "the court should correct it and give it proper form, if he has not otherwise instructed upon that issue; and after such request it is error for him to fail or refuse to give an instruction upon such issue." Roberson v. United States, supra. 4 Okl.Cr. at 337, 111 P. at 984.

Reversed and remanded.


BLISS, P. J., and BUSSEY, J., concur.