IKE NEWMAN SCARBOROUGH V. STATE

No. 32,961. February 22, 1961

Motion for Rehearing Overruled April 12, 1961

*Charles W. Tessmer, Fred Bruner, B. M. Bates,* Dallas, and *C. S. Farmer,* Waco, for appellant.

*Henry Wade,* Criminal District Attorney, *James K. Allen,* 1st Assistant District Attorney, *W. F. Alexander, Frank Watts, Robert Power, Phil Burleson,* Assistants District Attorney, Dallas, and *Leon Douglas,* State's Attorney, Austin, for the state.

DICE, Judge

The offense is murder; the punishment, 50 years.

The evidence was undisputed that, on March 23, 1960, the date alleged in the indictment, the appellant killed the deceased, Mildred Elizabeth Ott, by shooting her with a pistol.

The appellant, a single man thirty-one years of age, lived with his mother in the city of Dallas. The deceased, thirty-two years of age and also single, lived in the city. Appellant and the deceased first met in the year 1958 after which they began having dates together and appellant started going to her apartment. During a part of this time, one Lionel Gordon Rothchild, who admittedly was intimate with the deceased, lived in the apartment with her.

The state's proof shows that, while appellant and the deceased were going together, on occasions, they would quarrel and have difficulties. It was shown by the state's testimony that, in October 1959, on an occasion when they were parked in their automobiles near an ice cream parlor, a gun was discharged and appellant later admitted to the officers that he had shot at the deceased. It was further shown that, some four days before the killing, the deceased told appellant that she was through with him and appellant had, in turn, told her that he did not want to see her anymore.

The state's version of the killing is found in the testimony of the witness Rothchild.

Rothchild testified that, on the day of the killing, he saw the deceased at a beauty shop around 6 p.m.; that from the beauty shop they went to his apartment and, while they were having dinner, the telephone rang and it was the appellant calling to talk to the deceased; that, in the conversation, the deceased said, "I'll meet you at 7:30 p.m."; that they then left in Rothchild's automobile and the deceased drove to appellant's home where

she stopped the automobile at the gate; that, after three or four minutes, the appellant came from the house running down the driveway towards the automobile with his mother following behind; that appellant ran to the driver's side of the automobile where he pulled a pistol and proceeded to fire several shots; that, after appellant started shooting, the deceased said, "Ike is killing me", and then fell toward the witness. Rothchild testified that as she fell, the deceased's foot pressed the accelerator and caused the automobile, the motor of which was still running, to drive into another yard after which he took over the steering wheel and drove to a nearby filling station where the police and an ambulance were called.

It was shown that the deceased was dead upon arrival at the hospital. An autopsy performed upon her showed that five .38 calibre bullets had entered the body from the left side, one of the bullets passing through the heart and lung causing her death.

It was further shown that appellant disappeared immediately after the killing and, on the following day, appeared at the police station with his attorney and surrendered to the police.

Testifying as a witness in his own behalf, appellant described his relation and association with the deceased and her companion, Rothchild, from the time they first met. Appellant testified that he would go to see the deceased but would not permit her to come to his home. Appellant related how, on occasions, the deceased would tell him she was pregnant and, upon her demand, he would give her money. In describing the events leading up to the killing, appellant testified that, on the day of the homicide, he received a telephone call around 6 p.m. from a beauty operator who told him that the deceased had asked her to call and tell him she was being followed and would call later; that around 7 p.m. he received a telephone call from the deceased and, in the conversation, he talked to both the deceased and Rothchild. Appellant stated that, in the conversation, the deceased cursed him, said she was coming to his home to get certain nude pictures which he had of her, threatened to kill him, and said she expected to get $500. Appellant testified that, in the conversation, Rothchild said he was coming with the deceased and that he wanted the pictures. Appellant testified that he then got the pictures, secured the pistol, walked out of the house and down the driveway to the front entrance; that, after he had waited for some 15 or 20 minutes, an automobile turned into the driveway and the deceased, who was driving, tried to run over him; that, after the automobile stopped, he saw the deceased pointing a gun at him

through the window and he thereupon started shooting. Appellant stated that, at such time, he was in fear of his life or serious bodily injury and was in fear that the deceased would carry out the threats made against him.

The jury chose to reject the appellant's plea of self defense and we find the evidence sufficient to sustain its verdict.

We shall discuss certain contentions urged by appellant in his brief and oral argument.

Appellant first contends that the court committed reversible error in failing to postpone the case for one day after a list of four additional jurors was filed with the clerk and furnished to the appellant. Appellant relies upon that provision of Art. 601, V.A.C.C.P., regulating the time of service on a defendant of a copy of the names of jurors summoned under a special venire in a capital case which reads, "When such defendant is on bail, he shall not be brought to trial until after one day from the time the list of persons so summoned have been returned to the clerk of the court in which said cause is pending." The record shows that appellant's case was set for trial on June 13, 1960. On June 10, appellant was furnished with a list of 125 jurors who had been summoned for jury service for the week beginning June 13th. On June 13th, the names of the four additional jurors, who had reported to the court in response to a summons for contempt, were added to the original list furnished appellant. We are unable to agree that the addition of the names of the four jurors to the original list required that the case be postponed for one full day. The jury was selected from the original list of 125 jurors and, in the selection, appellant did not exhaust all of his peremptory challenges.

Appellant next contends that the court erred in sustaining the state's motion to suppress evidence and in abridging his right of cross-examination of the state's witness Rothchild.

A motion was filed by the state requesting the court to instruct appellant's counsel to ask no questions of the witness Lionel Rothchild with reference to any indictment against him in the Federal Court involving income tax evasion nor to allude to the same in the presence of the jury without such question having first been determined to be relevant and admissible by the court outside the presence and hearing of the jury.

In response to the motion, the court instructed counsel for

appellant not to ask the witness any questions concerning such an indictment without first calling the court's attention to the matter in order that the jury might be retired and the admissibility of the testimony be determined by the court.

We find no error in the court's action on the motion. Under the court's ruling, appellant was not denied the right to offer any admissible evidence before the jury. In Owens v. State, 58 Tex. Cr. R. 261, 125 S.W. 405, this court, in passing upon the court's action in permitting a witness to detail certain circumstances to the jury, some of which were not admissible, and then instructing the jury not to consider certain portions thereof, said: "The better practice would be to have the jury retired, let the witness then give the whole of the testimony, and then the court direct what shall be admissible." The court's action on the state's motion was not, as contended by appellant, tantamount to the granting of a motion to suppress evidence.

Following the court's ruling, appellant was permitted by the court to cross-examine the witness Rothchild outside of the presence and hearing of the jury with reference to the indictment pending against him. On such cross-examination, the witness testified that he was under a Federal indictment for income tax evasion and that the case had been once postponed. He was further cross-examined with reference to his financial condition both before and at the time of trial and as to whether he had been offered any assistance, and, or promises by the district attorney's office in the income tax fraud case for his testimony in the present trial. The witness denied any such offer.

We find no error in the court's refusal to permit such cross-examination and testimony before the jury. Under the provisions of Art. 732a, V.A.C.C.P., evidence of the indictment pending against the witness, which had not resulted in a final conviction, was not admissible for the purpose of impeaching him. Dempsey v. State, 159 Tex. Cr. R. 692, 266 S.W. 2d 875 and Gomez v. State, 162 Tex. Cr. R. 30, 280 S.W. 2d 278. The evidence offered pertained to the pending indictment and was properly excluded from the jury.

Appellant urges certain bills of exception to jury argument.

Bills Nos. 3, 5, and 6 present his objections to certain argument which the court overruled.

By Bill of Exception No. 3, appellant complains of that por-

tion of the argument of Assistant District Attorney Alexander when he stated:

"* * * by your verdict under the law and the facts let me know and let this Court know what the penalty for murder of this type is in Dallas County."

We are unable to agree with appellant that such argument was an implication to the jury of public opinion in the case. The argument, when considered in connection with preceding argument of the prosecutor when he told the jury that "the law is no stronger than the weakest heart on this jury," was nothing more than a plea for law enforcement, and permissible. Durant v. State, 167 Tex. Cr. R. 150, 319 S.W. 2d 109; Urteago v. State, 169 Tex. Cr. R. 161, 333 S.W. 2d 133.

Bill of Exception No. 5 presents appellant's objection to that portion of the argument of Assistant District Attorney Watts when he stated:

"This lawyer knows as well as anybody in this courtroom or within hearing of my voice that I will bring a man to trial if I think he should be tried whether he is on one side of the tracks or on the other."

The record reflects that Prosecutor Watts was preceded in argument by appellant's counsel, Mr. Tessmer, who inferred that the state was appealing to race or class prejudice. The argument of which appellant complains clearly appears to have been invited and in response to that of appellant's counsel; hence no error is shown. Owens v. State, 164 Tex. Cr. R. 613, 301 S.W. 2d 653.

Bill No. 6 presents appellant's objection to that portion of the argument of Assistant District Attorney Allen when he stated:

"They didn't choose to call one person who can tell you that Ike Newman Scarborough is a person of good reputation for being a peaceable law-abiding citizen."

The bill certifies that the court first sustained appellant's objection to the argument but later overruled the same as to that portion of the argument wherein state's counsel referred to the fact appellant had not produced any witness to testify as to his good reputation for being a peaceable and law-abiding citizen.

Under the record, the argument complained of in the bill does

not present error. Appellant, having filed an application for suspended sentence, placed his reputation in issue which authorized state's counsel to comment upon his failure to call any witness to attest his good reputation. Taylor v. State, 157 Tex. Cr. R. 124, 247 S.W. 2d 127 and Burnett v. State, 162 Tex. Cr. R. 1, 280 S.W. 2d 260.

The remarks complained of in the other bills of exception, to which appellant's objections were by the court sustained and the jury instructed not to consider the same, violated no mandatory statute and were not so obviously prejudicial that their effect upon the jury could not be removed by the court's instruction and do not present reversible error.

We have considered appellant's contention that the court erred in refusing to grant a mistrial because of certain questions propounded to him on cross-examination by state's counsel. An examination of the record reflects that in each instance the court sustained appellant's objection to the question propounded and instructed the jury not to consider the same. The questions were not so prejudicial that any error therein could not be cured by the court's instruction, therefore no reversible error is shown.

Other contentions urged by appellant have also been considered and are overruled.

The judgment is affirmed.

Opinion approved by the Court.