**Guadalupe GUAJARDO, Jr., Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 34788.**

Court of Criminal Appeals of Texas.

Jan. 2, 1963.

See also 354 S.W.2d 141.

Bonilla, Thomas & De Pena by Harold A. Thomas, Corpus Christi, for appellant.

Sam H. Burris, Dist. Atty., and John L. Campos, Asst. Dist. Atty., Alice, and Leon B. Douglas, State's Atty., Austin, for the State.

McDONALD, Judge.

The offense is murder; the punishment, life imprisonment.

The evidence reflects that following an evening of heavy drinking, the appellant got into a fight with several friends. Appellant's testimony reflects that, after running from the scene of the scuffle, a car tried to run him down. He ran home and got a revolver, but his mother seized the cartridges and refused to give them to him.

His mother testified that a car pulled up in front of the house just as her son got there and that the occupants were yelling and cursing the appellant.

The appellant went to several neighbors' homes in search of ammunition, but was unsuccessful. He decided to break into a friend's home, where he knew shells were kept. In the dark, he found four or five shells, which he thought were rat shot. (The evidence reflects that the deceased was hit by one "rat shot" and one regular .22 calibre bullet.)

The sheriff of Duval County was called to the house, apparently by a neighbor, and caught the appellant just as he crawled out of a window. In a few moments, several other police officers arrived, and the appellant was turned over to Constable Pedro Sendejo. As the sheriff and some of the others checked the house, they heard Sendejo say to the appellant "not to get curious, to get your hands out of your pockets." Shortly thereafter, two shots were fired.

Deputy Sheriff Molina testified that he saw the appellant shoot the deceased and heard him say, "they were not going to take him, nobody was going to arrest him," and saw the appellant run across the street into a vacant lot.

When the sheriff heard the shots, he ran around the house and found Sendejo in

the arms of Deputy Sheriff Amaya. Sendejo said, "He got me," and died within a few minutes.

The officers went to appellant's house, which was located one-half a block north of Oscar Garcia's house, where the shooting occurred, and found the appellant's father holding the appellant, who was hollering "that he would not give up, that he would rather be killed than give up." When the sheriff got there, appellant had a .22 calibre gun in his right hand, which he surrendered to the sheriff.

Appellant was then taken to the Duval County jail, where he wrote out a confession to the county attorney and admitted his guilt.

The issue of insanity was raised by the appellant, and there was expert testimony on both sides. The jury resolved this issue against him.

The sole contention urged by appellant in his brief is that the assistant district attorney made an improper argument in his opening remarks to the jury. The following is that portion complained of:

"Now, Mr. Burris and I, we know, and you all know, of course, you are charged here, that in this case you can send this man to the electric chair; and we feel, the State of Texas through its District Attorney and Assistant District Attorney, feel that this case warrants the approval of a death penalty. However, if in your mind you feel that you cannot, within your conscience, give this man the death penalty, then we submit to you: give him life imprisonment or ninety-nine years in the penitentiary. Just remember that the purpose of punishment is not only to punish the offender; that's not the only purpose. The purpose of punishment also is to deter other would-be crooks. So bear that in mind, that you are the conscience of your community. You are going to speak out for this community

and let the rest of the state know exactly what this community thinks about people that kill law officers.

\* \* \* \* \* \*

"Okay. Yes, you are the conscience of this community. You speak for this community, and the State of Texas feels that this case warrants the imposition of the death penalty, and if that can't be done, if you cannot do it within your own conscience, then by all means we respectfully request that you give him life imprisonment, or ninety-nine years in the penitentiary."

We think this was clearly a plea for law enforcement and permissible under the holdings of Scarborough v. State, Tex.Cr.App., 344 S.W.2d 886, and Lockett v. State, 155 Tex.Cr.R. 55, 231 S.W.2d 416.

In Scarborough, supra, the prosecutor argued:

"\* \* \* by your verdict under the law and the facts let me know and let this court know what the penalty for murder of this type is in Dallas County."

and that:

"\* \* \* 'the law is no stronger than the weakest heart on this jury'."

In Lockett, supra, the assistant district attorney said:

"When this day is over and you men have returned a verdict in this case, history will record whether or not a killer like that defendant sitting over there, can continue to shoot and murder men and go free in Lubbock County, Texas. History will record how you stand on this matter; history will record the fact that if a killer like this defendant sitting over there can do what he has done and go free, that there is no need for ever trying another man for murder in Lubbock County. You are making history in this case and don't forget that."

We have carefully reviewed the various informal bills of exception and find no reversible error reflected by any of them.

Finding the evidence sufficient to sustain the jury's verdict and no reversible error appearing, the judgment is affirmed.