**Arvis MITCHELL, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 04–81–00056–CR.

Court of Appeals of Texas,
San Antonio.

June 23, 1982.

Paul B. Keller, San Antonio, for appellant.

Bill White, Dist. Atty., Alan E. Battaglia, Asst. Dist. Atty., San Antonio, for appellee.

Before ESQUIVEL, CANTU, and BASKIN, JJ.

## OPINION

CANTU, Justice.

The offense is aggravated robbery by using or exhibiting a deadly weapon.[1] Punishment was assessed by the jury at thirty (30) years' confinement in the Texas Department of Corrections.

Appellant challenges the sufficiency of the evidence to support the conviction and complains of prosecutorial overreaching in three separate instances. We first address the sufficiency ground by noting that the evidence, viewed in the light most favorable to the jury verdict, reflects the following.

On December 20, 1978, at approximately 12:15 a. m., David Goddu was working as an attendant at an all-night Circle K convenience store, located at the corner of Marbach Road and Westedge in San Antonio, Bexar County. As Goddu finished attending to a customer, two black males walked into the store. When the customer left, one of the black males pointed a gun at Goddu and the other ordered him to turn over the money in the register. With the register open, the man without a gun reached into it and removed approximately $76.00. The same individual also took Goddu's wallet from him.

About that time Bonnie Womble, another customer of the store, walked in with six dollars in her hand for the purchase of gasoline. The same male who had relieved Goddu of his wallet grabbed Womble's money before she realized a robbery was in progress. The two men then ran out of the store, one behind the other, and headed for an apartment complex located directly across the street. Womble ran outside screaming while Goddu remained in the store telephoning police.

At the same time as the two men ran out of the store, San Antonio Police Officer John Menefee was cruising by the store and noticed the men running from the store toward the apartments. Upon turning his car around and driving in the direction of the fleeing men, Officer Menefee noted a large green and black automobile moving slowing away from the scene with the two men running after it yelling at the car to slow down. He then saw the back door open and one of the men jump in while the other dove into the vehicle through an open window. Officer Menefee immediately turned on his emergency lights and pursued the vehicle, which made a right turn onto a dead-end street.

One of the subjects got out of the stopped vehicle and attempted to leave, but was ordered back into the car by Menefee. Menefee held the suspects at bay with his shotgun until police assistance arrived a few minutes later. Four suspects were apprehended in the vehicle and returned to the convenience store. A search of the vehicle produced a pistol, $74.00, and Goddu's wallet. At the convenience store, the suspects were individually exhibited to Goddu and then to Womble. Goddu was able to positively identify Ivory Leo Gaines as the man who held the gun in his face during the robbery. However, he was only able to make a tentative identification of appellant as the person who had taken the money and his wallet. Goddu could not identify the other two men.

---

1. Tex.Penal Code Ann., § 29.03(a)(2) (Vernon 1974).

Womble, on the other hand, positively identified appellant as the person who took her six dollars, but could not positively identify Gaines. She had never seen the other two suspects before. Goddu and Womble both made in-court identifications of Gaines and appellant, respectively.

Officer Menefee identified Gaines and appellant as being the suspects who had been sitting in the car nearest the points of entry of the fleeing men whom he saw jump and dive into the car. The pistol recovered in the car was identified by both Goddu and Womble as being the same or similar to the one used by the assailants. The entire incident, from point of robbery to apprehension, took only a matter of minutes. Appellant did not testify, nor did he offer any defensive evidence.

■ The trial court submitted its charge to the jury on the theory of parties to a crime, and criminal responsibility for the conduct of another. Tex.Penal Code Ann. §§ 7.01, 7.02. (Vernon 1974). Viewing the evidence in the light most favorable to the verdict, as we must, we conclude the evidence to be overwhelmingly sufficient to sustain appellant's conviction. *Cf. Washington v. State*, 518 S.W.2d 240 (Tex.Cr. App.1975); *Minafee v. State*, 482 S.W.2d 273 (Tex.Cr.App.1972); *Fantroy v. State*, 474 S.W.2d 490 (Tex.Cr.App.1971). Appellant's challenge to the sufficiency of the evidence is overruled.

Appellant next contends that the trial court committed reversible error in denying his motion for mistrial when the prosecutor, in his closing argument to the jury during the guilt/innocence stage of the trial, stated, "very good work," because such argument injected unsworn testimony bolstering the State's witnesses.

During summation of the State's witnesses' testimony, the prosecutor stated,

Prosecutor: Then we had officer Aguilar, who was the detective investigator on the scene, and he came in and told us that he took photographs, so you have those photographs, too. This is very interesting. Usually we don't have anything like that, we don't have any photographs. This time you actually get to see where they found the gun. I mean, there is no question about it. There it is. It's a picture, right there. *Very good work.*

Took the money, took possession of the money—

Mr. Keller [Defense atty]: Objection, Your Honor. He is bolstering the testimony.

The Court: I will sustain the objection.

Mr. Keller: Your Honor, I feel that's harmful to my client. Would you please instruct the jury to disregard that?

The Court: That's granted. Disregard the last statement of the prosecutor of his opinion and do not consider it for any purpose whatsoever in your deliberation.

Mr. Keller: Your Honor, I move for a mistrial.

The Court: It will be denied.

(Emphasis added).

■ At the outset, we reject appellant's contention that such argument constituted an attempt to try him as a criminal generally, since we doubt that the argument, even under the broadest possible interpretation, can lend itself to such a construction. Additionally, this contention does not comport with the objection at trial. *Cork v. State*, 362 S.W.2d 314 (Tex.Cr.App.1962).

Appellant's argument that the prosecutor was bolstering the State's witnesses' investigative work was recognized by the trial court and made the subject of a requested curative instruction. The question before us is whether the complained of error is such that harm, if any, could not be removed through the use of a curative instruction.

■ It has generally been recognized that for jury argument to constitute reversible error the argument must be either extremely or manifestly improper, or must inject new and harmful facts into evidence. *Kerns v. State*, 550 S.W.2d 91 (Tex.Cr.App. 1977). We reject outright the possibility

that such argument injected new and harmful facts into evidence, since the record already was replete with references to the location of the gun when found by the arresting officers, as well as references about its cocked condition. The actual gun was admitted into evidence, as was the photograph of the gun depicting its position within the car, without the least bit of objection by appellant.

The record reflects,

[Prosecutor]

Q: Officer, I show you what's been marked for identification purposes as State's exhibit 6 and ask if you can describe what that is.

A: That's the pistol I saw lying beside the seat.

Q: Does that photograph accurately depict the location of the pistol when you first saw it?

A: Yes, sir, it does.

Since the instrument referred to by the prosecutor and made the basis of appellant's complaint was received in evidence only after the proper predicate was established, we fail to see any way the argument could constitute new and harmful evidence.

We consider the testimony of the police officers regarding the pistol, its condition when found, and its location within the car much more damning to appellant's case than the photograph in question or the argument complained of. The bolstering, if it can be said that the argument constituted bolstering, affected only the investigative success in obtaining the photograph and not the testimony of the officers themselves. We express the opinion that whatever bolstering effect the argument had did not significantly benefit the State nor prejudice appellant. There was no material issue of fact raised regarding the subject matter of the photograph. We doubt the efforts exerted to obtain a noncontroversial object can be bolstered so as to give rise to a claim of harm and prejudice.

■ Traditionally, bolstering objections have addressed attempts to reinforce a witness' testimony by referring to matters that have not been placed before the jury. *See Brown v. State*, 535 S.W.2d 640 (Tex.Cr.App.1976); *Puckett v. State*, 168 Tex.Cr.R. 615, 330 S.W.2d 465 (1959); *Caka v. State*, 165 Tex.Cr.R. 35, 302 S.W.2d 939 (1957); *Womack v. State*, 160 Tex.Cr.R. 237, 268 S.W.2d 140 (1954). *See also Woodard v. State*, 368 S.W.2d 623 (Tex.Cr.App.1963); *Alford v. State*, 158 Tex.Cr.R. 632, 258 S.W.2d 817 (1953). The instant argument does not fall within this prohibition nor do we think it can be labelled extremely or manifestly improper. Ordinarily any injury from improper jury argument is ameliorated when the court instructs the jury to disregard the argument, unless the remark is so inflammatory that its prejudicial effect cannot reasonably be removed by such an admonishment. *Blansett v. State*, 556 S.W.2d 322 (Tex.Cr.App.1977).

We are convinced that the trial court's admonishment to the jury that they should disregard the prosecutor's remark obviated any possible injury to appellant. Appellant's ground of error is overruled.

Appellant next complains of the trial court's overruling of his objection to the prosecutor's remark, made during jury argument at the guilt/innocence phase of the trial, that "he [appellant] is guilty of robbery." Appellant argues that such a comment constituted the unsworn opinion of the prosecutor that appellant was guilty of the crime charged.

The argument complained of occurred during closing summation when the prosecutor stated,

On their way out when Bonnie Womble walked in with her $6.00 Gaines held the gun in her face and Arvis grabbed the money out of her hand. Now, how much more aid and assistance can you get? I don't know, unless Arvis put his hand on the gun and held it, too. He is charged with robbery. *He is guilty of robbery* and . . .

(Emphasis added).

The State's theory of the case depended upon the law of parties to a crime and the trial court instructed the jury accordingly. During appellant counsel's summation to

the jury, he placed much emphasis upon an alleged lack of evidence to prove appellant's participation as a party to the aggravated robbery of David Goddu. Appellant's counsel argued that the evidence did not show use of a firearm by appellant nor any act tending to promote or assist the commission of a robbery by another. In fact, counsel suggested that appellant might be guilty of theft from Bonnie Womble but argued for acquittal based upon the State's failure to charge a crime by appellant against her.

■ In response to appellant's argument, and in closing, the prosecutor sought to argue the State's theory of the case. In doing so, the prosecutor responded to much of the argument presented by appellant's counsel by summarizing the elements of aggravated robbery as qualified by the law of parties and as applicable to the facts developed during trial. We think the prosecutor's argument was based upon reasonable deductions from the evidence, *Collins v. State*, 548 S.W.2d 368 (Tex.Cr.App.1976) *cert. denied* 430 U.S. 959, 97 S.Ct. 1611, 51 L.Ed.2d 811 (1977); *Sikes v. State*, 500 S.W.2d 650 (Tex.Cr.App.1973), as well as being a direct response to invited argument of appellant's counsel. *Garrison v. State*, 528 S.W.2d 837 (Tex.Cr.App.1975). As such it fell within the permissible scope of jury argument. *Dunbar v. State*, 551 S.W.2d 382 (Tex.Cr.App.1977); *Alejandro v. State*, 493 S.W.2d 230 (Tex.Cr.App.1973). Appellant's ground of error is overruled.

In his final ground of error appellant contends the trial court committed reversible error when it denied his motion for mistrial following the cross-examination of appellant's witness at the punishment stage. During that stage of the trial, appellant called his brother, George Mitchell, Jr., to testify about appellant's reputation and character in an effort to show appellant's entitlement to probation. In testifying, Mitchell volunteered that appellant was "a pretty good boy except when he ran around with the wrong guys."

On cross-examination the prosecutor asked the witness "have you heard" inquiries regarding appellant's arrests as a juvenile on ten occasions: three for burglaries of habitations, three for burglaries of buildings, twice for possession of marijuana, once for possession of stolen property, and once for robbery, as well as an adult arrest for burglary of a habitation. No objection was interposed by appellant to these questions and the witness was permitted to answer that he was aware of all of the foregoing arrests. Nevertheless, the witness insisted appellant's reputation [2] in the community was good.

The prosecutor continued the same line of questioning:

[Prosecutor]

Q: Well, tell us what type of person you consider to be bad and what they have to do to qualify to have a bad reputation.

A: Well, sir, there's bad in everybody, you know.

Q: Yeah. Everybody doesn't rip off everybody in town, though, do they?

Appellant immediately objected that the State was attempting to try him as a criminal generally. The court sustained the objection and instructed the jury not to consider the question for any purpose. Appellant's request for a mistrial was denied.

Cross-examination by the State continued:

[Prosecutor]

Q: Would you please describe for this jury, then, what qualifies a man as a bad person, in your opinion?

A: Well, since he's been a man he's only done a couple of bad things. I mean, he was a kid. He was a bad kid so he got into a lot of trouble but now what he's facing is something different, see,—

Q: Uh-huh.

A: —and, like I said, I wouldn't think it was Arvis' fault.

---

**2.** No effort was ever made by either side to limit the reputation to any particular trait but presumably all concerned understood the trait in question as being generally "peaceful and law-abiding."

Appellant's other witness likewise insisted appellant's reputation was good in spite of his arrest record.

We note at the outset that appellant has never complained, nor does he now complain on appeal, that the prosecutor's question implied the actual commission of the offenses made the basis of the "have you heard" questions. Instead, appellant maintains that the State was obviously attempting to try him for being a criminal generally and relies upon cases dealing with improper admission of extraneous offenses on the case in chief or in rebuttal. *See e.g., Albrecht v. State*, 486 S.W.2d 97 (Tex.Cr. App.1972); *Powell v. State*, 478 S.W.2d 95 (Tex.Cr.App.1972); *Hafti v. State*, 416 S.W.2d 824 (Tex.Cr.App.1967); *Young v. State*, 159 Tex.Cr.R. 164, 261 S.W.2d 836 (1953). None of these cases purports to extend the doctrine announced therein to the punishment phase of the trial, since clearly the defendant's guilt or innocence is no longer in question.

While the propriety of a "have you heard" question may be challenged either during the guilt/innocence[3] or punishment[4] phases of the trial, the question of whether evidence of extraneous offenses is admissible arises only when the relevancy of a material fact issue is raised and when the relevancy value of the evidence outweighs its inflammatory or prejudicial potential. *Murphy v. State*, 587 S.W.2d 718 (Tex.Cr.App.1979).

We think that an objection to the "have you heard" questions, that the way they were phrased assumed the actual commission of the offenses mentioned, would have been well-founded. *Brown v. State*, 477 S.W.2d 617 (Tex.Cr.App.1972). However, in view of the subsequent questions and answers delving into the same area without objection, the error, if any, would not have been preserved for review. *Duhart v. State*, 167 Tex.Cr.R. 150, 319 S.W.2d 109 (1958). In any event, the prompt action of the trial court in instructing the jury to

disregard convinces us that the appellant suffered minimal harm. *Ortiz v. State*, 490 S.W.2d 594 (Tex.Cr.App.1973). Appellant's ground of error is overruled.

No reversible error appearing in the record, the judgment is affirmed.

---

**3.** *Bell v. State*, 433 S.W.2d 443 (Tex.Cr.App. 1968).

**4.** *Hurt v. State*, 480 S.W.2d 747 (Tex.Cr.App. 1972).